**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**ATARA TUCKER EL** *et al.*                                                                        **PLAINTIFFS**

**v.**                                                                  **CIVIL ACTION NO. 3:26-CV-149-JHM**

**OLDHAM COUNTY** *et al.*                                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Atara Tucker El and Raya Sun Tucker El commenced the instant *pro se* civil rights action. Because they proceed *in forma pauperis* (DN 5), the Court must conduct an initial review of the action pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### I. SUMMARY OF COMPLAINT

Plaintiffs sue Oldham County Police Officer David Williams, Officer Weires, and Supervisor Jackie Davison in their individual and official capacities. Plaintiffs also name Oldham County as a Defendant.

The complaint states, "On March 4, 2025, Plaintiffs Atara Tucker El and Raya Sun Tucker El[1] were involved in a traffic stop conducted by Officer D. Williams in Oldham County, Kentucky. The events described below occurred during that encounter and subsequent custodial processing." The complaint goes on to state seven claims for relief.

Claim 1 of the complaint alleges excessive force in violation of the Fourth Amendment. The supporting factual allegations read:

> Plaintiff Raya Sun Tucker El was a passenger in the vehicle. During the stop, officers shined a bright flashlight into the vehicle at approximately 11:00 p.m. in heavy rain conditions. Plaintiff Atara Tucker El informed officers that Plaintiff Raya Sun Tucker El suffered from [posttraumatic stress disorder] PTSD. After being informed of this condition, Officer D. Williams and Officer Weires ordered

---

[1] For purposes of clarity, the Court refers to the Plaintiffs as "Atara" and "Raya Sun" where applicable.

Plaintiff out of the vehicle. Officer Weires placed a taser device against Plaintiffs back in a drive-stun position. Officer Williams simultaneously pressed a taser device against Plaintiffs chest. At the time the taser devices were pressed against his body, Plaintiff was not actively resisting, attempting to flee, or posing an immediate threat to officer safety. As a result of the force used, Plaintiff experienced chest and back pain, emotional distress, and worsening PTSD symptoms.

Claim 2 alleges a violation of Title II of the Americans with Disabilities Act (ADA) against

Oldham County:

During the traffic stop, Plaintiff Atara Tucker El informed officers that Plaintiff Raya Sun Tucker El suffered from PTSD. Despite being placed on notice of this condition, officers escalated the encounter and applied force without attempting to modify their approach or de-escalate the situation. The escalation of the encounter contributed to worsening PTSD symptoms. Oldham County, Kentucky, through its law enforcement officers, failed to reasonably accommodate Plaintiffs disability during the provision of law enforcement services.

Claim 3 alleges a violation of the Fourteenth Amendment's Equal Protection Clause. Plaintiffs allege that during the traffic stop, Defendant Williams "referred to Plaintiff Raya Sun as 'boy.' Plaintiff is an adult American man of Moorish descent." Plaintiffs continue that the officers "also referenced immigration authorities during the stop, despite Plaintiff presenting passport identification." As such, they allege that Plaintiff Raya Sun was "treated differently on the basis of race and ethnicity."

Claim 4 alleges an unreasonable search in violation of the Fourth Amendment. Plaintiffs allege that following the traffic stop, Plaintiff (presumably Raya Sun) "was transported to the Oldham County Jail for booking" where he was "subjected to a strip search during intake" despite not being charged with a drug offense. Plaintiffs aver that the strip search "was conducted without individualized reasonable suspicion."

Claim 5 of the complaint alleges a violation of the First Amendment's free exercise clause. Plaintiffs state that "During booking intake, Plaintiff was wearing a religious head covering."

2

They continue, "Plaintiff informed intake personnel that the covering was worn for religious purposes and requested to retain it[,]" however, the "intake officer removed the head covering . . . ." The Court understands this claim to pertain to Plaintiff Raya Sun.

Claim 6 alleges municipal liability under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In support of this claim, Plaintiffs allege that "Oldham County, Kentucky, is responsible for the training, supervision, and policies governing its officers." They state that during the March 4, 2025 encounter, "[b]ody-worn cameras were deactivated during portions of the stop and detention" and that "[s]upervisory personnel were present during portions of the encounter." Plaintiffs aver that "the County's failure to properly train, supervise, and enforce constitutional standards contributed to" the alleged violations set forth in Claims 1 through 5 above.

Claim 7 alleges loss of consortium under Kentucky state law. Plaintiffs allege that, as a result of the actions alleged in the complaint, "Plaintiff Atara Tucker El has suffered loss of companionship and emotional support."

Plaintiffs allege that as a result of the incident, Plaintiff Raya Sun suffered physical pain and ongoing emotional distress, including aggravation of his PTSD symptoms.

As relief, Plaintiffs seek "compensatory, punitive, and nominal damages; declaratory and injunctive relief; costs and attorney-fee eligibility under 42 U.S.C. § 1988."

## II. STANDARD OF REVIEW

Because Plaintiffs proceed *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e). On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or

3

seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.   *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).   To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."   *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### A. Official Capacity Claims; Claims against Oldham County

Plaintiffs sue Defendants Williams, Weires, and Davidson in their official capacities. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell*, 436 U.S. at 691 n.55). This means that Plaintiffs' official capacity claims are actually against Oldham County, Defendants' employer.

A municipality or, as here, a county, cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *See Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To allege municipal or county liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The county's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiffs allege that Defendant Oldham County is liable under a theory of municipal liability because, during the March 4, 2025, traffic stop, "[b]ody-worn cameras were deactivated during portions of the stop and detention" and "[s]upervisory personnel were present during portions of the encounter." Plaintiffs maintain that "the County's failure to properly train,

supervise, and enforce constitutional standards contributed to the violations" asserted in the complaint.

The complaint does not allege any action taken against Plaintiff Raya Sun occurred pursuant to a policy or custom of Oldham County and alleges a single incident affecting Raya Sun only. *See generally Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."); *see also, e.g.*, *Parks v. Graceson Cnty. Det. Ctr.*, No. 4:23-CV-P19-JHM, 2023 WL 3066159, at *2 (W.D. Ky. Apr. 24, 2023) (dismissing official capacity claim where allegations pertained only to plaintiff and did not point to a county custom or policy).

Moreover, any *Monell* claim premised upon inadequate training or supervision by Oldham County likewise fails. To successfully plead such a claim, Plaintiffs must plausibly allege that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [county's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Romero v. City of Lansing, Mich.*, 159 F.4th 1002, 1015 (6th Cir. 2025) (internal quotations and citations omitted); *see also H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1010 (S.D. Ohio 2015) ("To prove a failure-to-supervise claim, a plaintiff must meet the same standards required to prove a failure-to-train claim, that is, a municipality's deliberate indifference to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the [alleged injury].") (citations omitted).

Significantly, the complaint does not state how Oldham County's training or supervision of its police officers was inadequate or how any deficiencies were connected to the harms Raya Sun claims to have suffered. *Keitz v. City of Covington*, No. 2:25-CV-00125-SCM, 2026 WL 867760, at *4 (E.D. Ky. Mar. 30, 2026) (dismissal was appropriate where factual

allegations did not "create a clear connection between the supposedly inadequate training or supervision and [the plaintiff's] injuries" and due to the complaint's "lack of specificity and . . . reliance on labels and formulaic recitations, it is impossible to know whether better training or supervision would have prevented" alleged harm).

Also absent from the complaint are factual allegations suggesting that Oldham County was deliberately indifferent to the rights of Raya Sun or other arrestees.  Stated another way, Plaintiffs allege no similar instances of alleged unconstitutional conduct or other facts putting Oldham County on notice that its officers were likely to commit constitutional violations by disabling body cameras during traffic stops.  *See Barnett v. Christian Cnty. Jail*, No. 5:25-CV-P55-JHM, 2025 WL 2422631, at *3 (W.D. Ky. Aug. 21, 2025) (to successfully plead a failure-to-train claim, "the municipality or county must be aware of past instances of unconstitutional conduct by its employees and recklessly disregarded them") (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A pattern of similar constitutional violations by untrained employees was necessary to demonstrate deliberate indifference for purposes of failure to train.")); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (plaintiff's "blanket assertions that the City 'condon[ed]' or 'tolerat[ed]' police officer misconduct" failed to state a *Monell* claim under a theory of inadequate training and supervision and no facts were alleged suggesting: (1) that the City ignored a clear and persistent pattern of misconduct; (2) the existence of an official policy or custom; or (3) any prior incidents to support an informal practice or custom).

In sum, Plaintiffs' assertion that the "County's failure to properly train, supervise, and enforce constitutional standards contributed to the violations above" is conclusory and fails to state a claim upon which relief may be granted.  *See Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025) (affirming dismissal of *Monell* claims because the "complaint included both a

7

failure-to-train theory of *Monell* liability as well as a policy-or-custom theory" but "contain[ed] only bare legal conclusions, not factual allegations that plausibly allege" municipal liability). Accordingly, Plaintiffs' official capacity claims and claims against Oldham County must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual Capacity Claims

#### 1. Excessive Force

The complaint alleges that during the traffic stop, Defendants Williams and Weires placed taser devices against Plaintiff Raya Sun's chest and back, respectively, in drive-stun mode,[2] even though he was not actively resisting. For purposes of screening, the Court presumes that Plaintiff Raya Sun was an arrestee at the time of the traffic stop.[3]

Construing the complaint liberally, the Court concludes that Plaintiff Raya Sun's Fourth Amendment excessive force claim against Defendants Williams and Weires in their individual capacities may proceed past initial review.[4] *See generally Hagans v. Franklin Cnty. Sheriff's Off.,*

---

[2] The Court understands "drive-stun" mode to mean that the taser device was deployed without the dart cartridge by delivering an electric shock when pressed directly against a person's body. *See Pennington v. Terry*, 644 F. App'x 533, 539 (6th Cir. 2016) ("There are two methods of deploying a Taser: drive-stun mode and dart mode. In drive-stun mode, the operator places the Taser's 'two electrode contacts . . . directly against the victim' to deliver an electric shock.") (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 492 (6th Cir. 2012)).

[3] Excessive force claims can be raised under the Fourth, Eighth, and Fourteenth Amendments. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). "Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two." *Id.* The Fourth Amendment applies to free citizens; the Eighth Amendment applies to convicted persons; and the Fourteenth Amendment applies to pretrial detainees. *Id.* Given the information contained in the complaint, it remains possible for Plaintiff to develop a factual record that would support a Fourteenth Amendment claim, depending on whether there had been a judicial determination of probable cause at the time of the alleged incident. *See Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010).

[4] Plaintiff Raya Sun does not specify the charges that were lodged against him, and there are no allegations pertaining to any state criminal proceedings against him arising from the March 4, 2025, arrest. If this plaintiff has a criminal case stemming from his allegations that is still pending, it may be necessary for the Court to stay the instant action until completion of the criminal matter. Alternatively, if Raya Sun has been convicted of any charges claimed to be brought illegally, his claims may be subject to the bar articulated in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that a state prisoner does not state a cognizable claim under § 1983 where a ruling on his claim would imply the invalidity of his conviction and/or confinement, unless and until the conviction has been favorably terminated, *i.e.*, reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called

8

695 F.3d 505, 509 (6th Cir. 2012) ("[W]hen we have found excessive force [by use of a taser device], the suspects were compliant or had stopped resisting.") (citing cases).

## 2. ADA

The complaint alleges that Oldham County, through its law enforcement officers, failed to reasonably accommodate Plaintiff Raya Sun's disability of PTSD during the course of his arrest in violation of Title II of the ADA. The allegations state that the officers involved in the traffic stop did not attempt to "modify their approach or de-escalate the situation" and that "escalation of the encounter contributed to [his] worsening PTSD symptoms."

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. There is a circuit split as to whether "this language imposes a duty on arresting officers to make reasonable accommodations during an arrest" and the Sixth Circuit has not explicitly decided the issue. *Peroli v. Huber*, No. 1:19-CV-1755, 2021 WL 308102, at *9 (N.D. Ohio Jan. 29, 2021), *aff'd*, No. 21-3202, 2021 WL 5411215 (6th Cir. Nov. 19, 2021) (observing circuit split and listing cases); *see also Booth v. Lazzara*, 164 F.4th 581, 588 (6th Cir. 2026) (assuming, without deciding, "that the ADA might regulate this law-enforcement conduct").

Assuming Plaintiff Raya Sun is a qualified individual with a disability, and that the ADA is applicable to the arrest, the complaint fails to state a claim against Oldham County because he explicitly seeks to hold the County liable on the basis of vicarious liability. *See Jones v. City of Detroit, Mich.*, 20 F.4th 1117 (6th Cir. 2021) (holding that a public entity cannot be vicariously liable for violating Title II of the ADA); *accord Booth*, 164 F.4th at 589 ("The ADA does not

---

into question by a federal court's issuance of a writ of habeas corpus.

permit Mrs. Booth to hold the City of Monroe liable for its officers' misconduct under a vicarious-liability theory."). Moreover, the complaint does not allege that Plaintiff Raya Sun requested a reasonable accommodation, which is an essential element of a Title II ADA claim. *See Depew v. City of Solon*, No. 1:22-CV-01251, 2023 WL 2242795, at \*7 n.7 (N.D. Ohio Feb. 27, 2023) (noting that plaintiff did not allege that he requested a reasonable accommodation and complaint alleged only that defendants knew of plaintiff's PTSD diagnosis and acted in a manner to "agitate and aggravate him").

Had Plaintiffs sued the officer-defendants in their individual capacities for a violation of the ADA, such a claim would likewise fail. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity."), *accord Pennington v. Crews*, No. 3:23CV-P132-JHM, 2023 WL 5334583, at \*4 (W.D. Ky. Aug. 18, 2023) (dismissing Title II ADA claim against individual defendants on initial review).

Therefore, Plaintiff's ADA claims must be dismissed for failure to state a claim upon which relief can be granted.

### 3. Equal Protection

The complaint alleges that "[d]uring the encounter, [Defendant] Williams referred to Plaintiff Raya Sun as 'boy'" and "referenced immigration authorities," thereby treating him differently on the basis of race and ethnicity. Raya Sun identifies as "an adult American man of Moorish descent."

"In order to state an equal protection claim, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class or that the state infringed upon a fundamental right." *Coleman v. Martin*, 363 F.Supp.2d 894, 902 (E.D.

10

Mich. 2005) (citing *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990), *abrogated on other grounds by Albright v. Oliver*, 510 U.S. 266 (1994)).  <u>Liberally construed, the allegations state a potentially cognizable equal protection claim against Defendants Williams and Weires in their individual capacities, and this claim may proceed for further development</u>.

### 4. Unreasonable Search

The complaint alleges that Plaintiff Raya Sun was subjected to an unlawful strip search during intake at the Oldham County Jail, despite not being charged with a drug offense, in violation of the Fourth Amendment.  Plaintiffs do not identify the individuals responsible for the allegedly unconstitutional search.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Because the complaint does not specify any individual or individuals responsible for searching Plaintiff Raya Sun at the Oldham County Jail, his claim asserting a violation of the Fourth Amendment will be dismissed for failure to state a claim upon which relief may be granted.

Moreover, Plaintiff fails to put forth sufficient facts to plausibly allege an unreasonable search in violation of the Fourth Amendment.  The Supreme Court has held that "detainees may be subjected to suspicionless strip searches as part of the jail's intake process." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 478 (6th Cir. 2017) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012)).  A strip search "may be unreasonable by virtue of the way in which it is conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (citing

11

*Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 574 (6th Cir. 2013)).  However, the Fourth Amendment does not prohibit the search of a detainee so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and is not performed for a wrongful purpose, such as to harass or humiliate the subject.  *Stoudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Here, Plaintiff Raya Sun alleges only that he was subjected to a strip search during intake at the Oldham County Jail without individualized reasonable suspicion and that he was not charged with a drug offense.  These allegations are conclusory, and the complaint sets forth no other supporting facts about the strip search to plausibly suggest its unreasonableness such to state a claim under the Fourth Amendment.  *See, e.g.*, *Niphong v. Unknown Maliahiasbe*, No. 1:25-CV-1194, 2025 WL 3039314, at *4 (W.D. Mich. Oct. 31, 2025) (dismissing Fourth Amendment strip search claim on initial review where plaintiff alleged "no facts to suggest that the search was conducted in an unreasonable manner").  Accordingly, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### 5. Free Exercise

The complaint alleges that Plaintiff Raya Sun's religious head covering was removed during "booking intake" at the Oldham County Jail in violation of the First Amendment's Free Exercise clause.

Detainees retain the First Amendment right to the free exercise of their religion.  *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).  A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion.  *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015).

12

Again, no officer or defendant is identified as having removed and/or confiscated Plaintiff Raya Sun's head covering at the Oldham County Jail.  More importantly, however, the complaint does not identify Raya Sun's religion or explain how the removal of his head covering impacted his ability to practice his unspecified religion.   This claim must therefore be dismissed. *See Kuhbander v. Blue*, No. 4:15CV-P123-JHM, 2016 WL 411085, at *3 (W.D. Ky. Feb. 2, 2016) (allegations that "religious material" for an unspecified religion was confiscated, without more, failed to state a cognizable § 1983 claim); *Brown v. Martino*, No. 24-13092, 2025 WL 1372821, at *3 (E.D. Mich. May 12, 2025) ("Merely alleging that [defendant] 'ma[de] [plaintiff] remove [his] kufi,' without any additional details or context, is insufficient to state a First Amendment free exercise claim."); *Thomas v. Maguinuss*, No. 4:24-CV-15-DCLC-CHS, 2024 WL 924191, at *5 (E.D. Tenn. Mar. 4, 2024) (plaintiff failed to state a First Amendment claim where he alleged that defendants refused to allow him to wear a kufi to court proceedings but did not "advise the Court of his religious affiliation" or set forth any facts from which the Court could plausibly infer a religious practice or substantial burden of observation of faith).

### 6. Supervisory Liability

Plaintiffs name Jackie Davidson, Supervisor, Oldham County Police in the complaint but ascribe no actions to this Defendant.

If a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims because the complaint did not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each" alleged violation of rights); *Griffin v.*

13

*Montgomery*, No. 00-3402, 2000 WL 1800569, at \*2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

To the extent the complaint purports to assert a claim of supervisory liability against Defendant Davidson, no such claim lies because the complaint lacks factual allegations suggesting his personal involvement as required for § 1983 claims.  It is well-settled that the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell.*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability.").

Instead, to establish a claim against a supervisor, Plaintiff must show that "'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 792, 802-03 (6th Cir. 2009)); *see also McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006).  A plaintiff must also plead a "'causal connection' between the supervisor-defendant's 'active unconstitutional behavior' and the plaintiff's injuries." *Crawford v. Tilley*, 15 F.4th 752, 761-62 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)).

The complaint alleges that unnamed "supervisory personnel were present during portions of the encounter." To the extent Plaintiffs suggest that Defendant Davison was present during the traffic stop, they cannot, without more, maintain a claim of supervisory liability against him. *See Caudell v. City of Loveland*, 226 F. App'x 479, 482 (6th Cir. 2007) (where plaintiff alleged "nothing more than [supervisor-defendant's] presence during the search; even accepting this as true . . . this allegation fails to make out a claim for supervisory liability under § 1983"); *Thompson v. Moore*, No. 3:22-CV-252-KAC-DCP, 2022 WL 16857325, at *3 (E.D. Tenn. Nov. 10, 2022) (supervisor's "mere presence at the scene" of alleged unconstitutional actions was insufficient to impose supervisory liability). The complaint does not contain any other allegations pertaining to Defendant Davidson, let alone any facts suggesting a causal link between Davidson's conduct and Raya Sun's alleged injury. Thus, to the extent Plaintiff Raya Sun seeks to raise a claim against Defendant Davidson based solely on his supervisory status, it must be dismissed for failure to state a claim upon which relief may be granted.

### 7. Loss of Consortium

Invoking this Court's supplemental jurisdiction, Plaintiff Atara asserts a claim of loss of consortium under Kentucky law based on the alleged constitutional violations above. <u>Upon review, Plaintiff Atara Tucker El's derivative state law claim may proceed for further development</u>. *See Kinzer v. Metro. Gov't of Nashville*, 451 F. Supp. 2d 931 (M.D. Tenn. 2006); Ky. Rev. Stat. § 411.145(1)-(2).

However, insofar as Plaintiff Atara purports to assert any claims for damages under § 1983 based upon the alleged constitutional violations against her spouse, they must fail. "A § 1983 claim 'is entirely personal to the direct victim of the alleged constitutional tort.'" *Tallman v. Elizabeth Police Dep't*, 344 F. Supp. 2d 992, 997 (W.D. Ky. 2004) (quoting *Claybrook v.*

*Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000), *abrogation on other grounds recognized by Kilnapp v. City of Cleveland, Ohio*, 167 F.4th 909 (6th Cir. 2026)).  As the Sixth Circuit has stated, "only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357 (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (a § 1983 claim is a purely personal action "cognizable only by the party whose civil rights had been violated")).  Because a § 1983 action only allows the purported injured person to bring a claim for damages, any such claims brought by Plaintiff Atara based on the alleged unconstitutional conduct against her spouse, Raya Sun, must be dismissed.

## IV. ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Raya Sun Tucker El's claims for excessive force under the Fourth Amendment and equal protection under the Fourteenth Amendment against Defendants Wiliams and Weires in their individual capacities will continue past initial review.  Plaintiff Atara Tucker El's derivative claim for loss of consortium under Kentucky state law will also proceed. In permitting these claims to continue, the Court passes no judgment on their merit and ultimate outcome.

**IT IS FURTHER ORDERED** that all other claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted.

**The Clerk of Court** is **DIRECTED** to terminate Defendants Jackie Davidson and Oldham County as parties to this action.

The Court will enter a separate Service and Referral Order to govern the development of the claims it has allowed to proceed.

Date:   August 6, 2026

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:      Plaintiffs, *pro se*
4414.015